## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LEO SUNIAGA**, *et al.* | : | |
| | : | **CIVIL ACTION** |
| | : | |
| v. | : | No. 20-2283 |
| | : | |
| **DOWNINGTOWN AREA** | : | |
| **SCHOOL DISTRICT**, *et al.* | : | |

**McHUGH, J.**                                                                                                              **April 28, 2025**

## MEMORANDUM

This is a civil suit brought by a former teacher alleging a variety of claims under federal and state law, the heart of which are his claims for denial of procedural due process. Plaintiff seeks reconsideration of my earlier order granting summary judgment as to the School District Defendants, while the School District Defendants ask me to extend my analysis of Plaintiff's federal claims to bar his state law claims as well. For the reasons that follow, Defendants' motion will be granted, and Plaintiff's motion will be denied.

**I.      Relevant Background**

   **A.  Procedural Posture**

Plaintiff's Third Amended Complaint advanced constitutional due process claims under 42 U.S.C. § 1983, alleging that the School District and several School District officials (the "School District Defendants") deprived him of a property interest in continued public employment, as well as a liberty interest in his reputation. Plaintiff also asserted state law claims against the School District Defendants for defamation, false light, tortious interference, and conspiracy.[1]

---

[1] Plaintiff also brought claims against several parents of school children for intentional infliction of emotional distress, defamation, false light, tortious interference, and conspiracy. For purposes of this motion, these claims are not at issue.

On February 5, 2025, I issued a memorandum and order granting in part and denying in part the School District Defendants' motion for summary judgment. I granted the motion with respect to Counts I and II (Section 1983 Procedural Due Process claims). Defendants, however, failed to address Plaintiff's state law claims in their motion. Accordingly, I denied the motion with respect to Counts III (Civil Conspiracy), IV (Defamation), VI (Tortious Interference), and VII (False Light).

Plaintiff now moves for reconsideration of my order granting summary judgment for the School District Defendants on his Section 1983 procedural due process claims. ECF 146. In addition, the School District Defendants have filed a motion for reconsideration, "or in the alternative, renewed motion for summary judgment" and "seek to raise arguments regarding the Plaintiffs' state law claims that were inadvertently not raised" in their original motion. ECF 145-1 at 3.

## B. Factual Background

The factual allegations in this case are set forth in significant detail in my prior memorandum issued on February 5, 2025 (ECF 141) with the recitation here far more condensed. Plaintiff Leo Suniaga worked for twenty-four years in the Downingtown Area School District (the "School District") as a health and physical education teacher. In 2014, Mr. Suniaga accepted a position at the Marsh Creek Sixth Grade Center ("Marsh Creek"), where he was tasked with implementing the school's "Wellness" curriculum. ECF 136-1 at ¶¶ 3, 10. In April 2019, Suniaga started a unit on human growth and development, covering issues of puberty and sexual health. *Id.* at ¶¶ 25-33. On May 6, 2019, Marsh Creek's Principal, Thomas Mulvey, received an email from a parent alleging that Mr. Suniaga had made inappropriate comments during class. ECF 130-7. The parent alleged that Suniaga had displayed a picture of their daughter on the board, and asked students to observe how she had "developed." *Id.* Additionally, the parent claimed that

Suniaga had asked female students about their shaving habits, commented on their height and weight, and remarked to a student: "you used to be cute." *Id.* Principal Mulvey forwarded the email to Sharon Standish, the School District's Director of Human Resources, who advised Mulvey that she may have to put Suniaga on leave. ECF 130-47 at ¶¶ 38-39. The following day, Principal Mulvey met with several students and the parent regarding the allegations. ECF 130-44 at ¶ 20; ECF 130-13. Mulvey advised Standish that he believed the allegations were credible, and Standish placed Suniaga on administrative leave with pay pending further investigation. ECF 130-47 at ¶ 42.

On May 13, Principal Mulvey informed Marsh Creek parents that "allegations have been made that your child's Wellness teacher has made inappropriate comments to students in a class" and "[t]he teacher has been placed on administrative leave while an investigation is occurring." ECF 130-42. On May 14, Plaintiff was provided with a Notice of Allegations and informed that he would have an opportunity to address the allegations at an upcoming hearing. ECF 136-17. Following the hearing, Emilie Lonardi, the School District's Superintendent, suspended Suniaga for thirty days without pay.[2]

In mid-August 2019, Superintendent Lonardi, hoping to provide Suniaga a fresh start, transferred Suniaga from Marsh Creek to Beaver Creek Elementary School ("Beaver Creek").[3] ECF 130-47 at ¶ 71. News of Plaintiff's transfer sparked outrage, particularly on social media. Defendant Megan Murphy circulated an online petition protesting Suniaga's transfer, expressing

---

[2] Suniaga was later presented with a Release and Settlement Agreement, which would have reduced the duration of the suspension to nine days. ECF 136-1 at ¶ 47; ECF 136-22; ECF 130-23; ECF 130-24; ECF 130-47 at ¶ 72. It is unclear from the record whether Suniaga ever signed the Agreement.

[3] It appears that the idea to transfer Plaintiff was first raised by Tricia Audrain, Suniaga's union representative, during his hearing on May 29. Given persistent rumors and continued concern from Marsh Creek parents, Audrain believed that a transfer "could be in the best interest of the school and [Suniaga]." Suniaga Hearing 47:7-11, ECF 136-20.

in part: "We are shocked and outraged that [Suniaga] has been placed at Beaver Creek, and do not feel comfortable with him teaching our daughters or being a role model for our sons." ECF 131-4 at 4. Over the span of a few days, the petition garnered over 300 signatures and 70 comments, vilifying Suniaga and lodging fresh accusations. *Id.* at 2.

Beaver Creek officials sought to address the internet firestorm. In an August 17 email to parents, Beaver Creek's principal, Dawn Lawless, explained that during the previous year, a Marsh Creek parent had "brought a concern to the principal's attention regarding an inappropriate comment made by Mr. Suniaga." ECF 130-40. Lawless added that, while she was not authorized to "disclose the comment," she "agree[d] that it was not appropriate" and was "grateful to the student and parent for bravely bringing this concern to their principal." *Id.* Lawless noted, however, that, "[a]fter a thorough investigation . . . it was determined that while Mr. Suniaga's comment was not appropriate, no child was ever touched or put in harm's way." *Id.* Principal Lawless assured parents that, though Suniaga had been cleared to return to the classroom, the School District had arranged for "a second adult in his classes at the start of the school year." *Id.* This arrangement, Lawless asserted, would provide Suniaga with an opportunity "to demonstrate that he has learned from his past mistakes in an environment where our families feel safe." *Id.* Principal Lawless noted that Mr. Suniaga had served as an instructor in the School District's elementary schools for nearly twenty years, during which time "there were never any complaints or concerns." *Id.*

Principal Lawless' emails failed to mollify concerns. On August 19, an email to parents from "Concerned Beaver Creek Parents" alleged that Suniaga had been suspended from Marsh Creek for "making inappropriate comments about his female students' breast development in front of the class." ECF 136-37 at 2. On August 20, Superintendent Lonardi met with forty Beaver

4

Creek parents, many of whom expressed that they did not believe their kids would be safe in Suniaga's class. ECF 136-39. One parent claimed that, twenty years prior, Suniaga had called his elementary aged daughter fat, resulting in an eating disorder and other mental health issues. *Id.* At the parent meeting, Lonardi emphasized that the allegations involved inappropriate *comments* – not sexual abuse – and reiterated the School District's commitment to assigning a substitute teacher to Suniaga's classes. Lonardi also mentioned that one parent per day may have the opportunity to observe Suniaga's class. *Id.* After the meeting, school officials received additional allegations of inappropriate comments, and were alerted to a purportedly suggestive video posted to Suniaga's personal Facebook page. ECF 130-15; ECF 130-25; ECF 130-26; ECF 130-36.

On August 23, Superintendent Lonardi, in consultation with HR Director Standish, decided once again to place Suniaga on administrative leave with pay. ECF 130-47 at ¶ 87. In an email to Beaver Creek parents, Principal Lawless explained that the School District had received "new allegations," including "from people with firsthand information." ECF 136-40. Other allegations, she noted, were second-hand accounts, and "general in nature." *Id.*

After an investigation, the School District determined there was insufficient evidence to support the allegations against Mr. Suniaga. ECF 130-47 at ¶¶ 90-91. And so, on November 7, Suniaga was directed to return to school. While counsel discussed the details of Suniaga's return to Beaver Creek – and disputed the extent to which the School District would clear his name – Suniaga was granted FMLA leave. *Id.* at ¶ 92. On December 4, Mr. Suniaga informed the School District that, per the advice of his health care provider, he was unable to return to work. *Id.* at ¶ 103. Suniaga remained on medical leave for the remainder of the 2019-2020 school year. Third Am. Compl. ¶ 219, ECF 59. On June 30, 2020, Mr. Suniaga resigned. ECF 136-1 at ¶ 1.

In February 2025, I issued an order granting in part and denying in part the School District Defendants' motion for summary judgment. Plaintiff has moved for reconsideration and the School District Defendants have filed a renewed motion for summary judgment.

## II.    Standard of Review

The Third Circuit has stated that "[t]he scope of a motion for reconsideration . . . is extremely limited," *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011), and its purpose "is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). To prevail on a motion for reconsideration, the moving party must demonstrate: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court" entered its prior ruling; "or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citation omitted).

## III.    Discussion

### A. Plaintiff's motion for reconsideration must be denied because he has not presented newly discovered evidence or established clear errors of law or fact.

#### 1. *The policy manual and the School District's investigation*

Plaintiff maintains that I neglected to address certain aspects of the School District's nondiscrimination policy as applicable to his suspension at Marsh Creek. Specifically, he contends that I "failed to take this policy and its proscriptions into consideration" and "omit[ed] the fact that Suniaga was not afforded an opportunity to know the charges being made against him on the day he was placed on suspension with pay nor given an opportunity to provide his side of the incident alleged." ECF 146 at 6.[4]

---

[4] In his Reply, Plaintiff distills his contention as follows: the School District Defendants deprived him of his procedural due process rights because state law, the Collective Bargaining Agreement, and the

The policy provides that "complaints of discrimination, harassment, or improper conduct shall be investigated promptly, and appropriate corrective or preventative action be taken when allegations are substantiated." ECF 146-3 at 1. In most instances, the school principal is charged with accepting complaints. He or she must do so "objectively, neutrally, and professionally" and the subsequent investigation must be "adequate, reliable and impartial."[5] *Id.* at 6.

The policy sets forth broad principles for how complaints should be investigated and resolved, but Plaintiff points to no specific right it confers which he was denied. Nothing in the policy prohibits the School District from placing a teacher accused of making inappropriate comments on paid administrative leave pending further investigation. Plaintiff advances no persuasive argument why a teacher must remain in the classroom in order for a school district's investigation to be "adequate, reliable, and impartial." In my prior memorandum, I acknowledged that Plaintiff possessed a constitutionally protected property interest based on Pennsylvania law and the terms of the CBA, and so held. *See* Memorandum at 11-13. But whether an individual possesses a property interest cognizable under the Fourteenth Amendment is a distinct inquiry from whether an individual has been afforded sufficient process. *See Robb v. City of Philadelphia*, 733 F.2d 286, 292 (3d Cir. 1984) ("we first must ask whether the asserted individual interests are encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property'; if protected interests are implicated, we then must decide what procedures constitute 'due process of law'").

---

nondiscrimination policy required the School District to "at least advise the Plaintiff of the allegations made against him and allow him the opportunity to provide his side of the story." ECF 149 at 1.

[5] The policy also designates compliance officers. *See* ECF 146-3 at 4 ("Where a complaint involves both students and employees, or others, the Assistant Superintendent and the Director of Human Resources shall coordinate the investigation and corrective action.").

Here, Principal Mulvey and HR Director Standish notified Plaintiff (who was represented at the meeting by Craig Krusen, Plaintiff's local union president) that he was being placed on leave due to allegations that he had made inappropriate comments. And while it appears that Plaintiff did not have an opportunity to refute specific allegations during this first meeting, that does not suffice to establish a denial of due process in the absence of provisions in the district policy or collective bargaining agreement conferring such a right. Given the nature of the accusations (and Principal Mulvey's belief based on several interviews that at least some of them were credible), Plaintiff's recent disciplinary history, and the strong government interest in upholding public trust and ensuring student safety, it did not violate the Constitution for the District to place Mr. Suniaga on paid leave while the investigation proceeded. I reaffirm my conclusion that, under certain circumstances, school officials who perceive a significant hazard may satisfy the requirements of the Due Process Clause by placing a teacher on leave with pay, pending an investigation. *Gilbert v. Homar*, 520 U.S. 924, 930 (1997) ("This Court has recognized, on many occasions, that where a State must act quickly, or where it would be impractical to provide predeprivation process, postdeprivation process satisfies the requirements of the Due Process Clause"); *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 544-45 (1985) (where an "employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by suspending with pay");[6] *Licausi v. Allentown Sch. Dist.*, No. 19-1258, 2020 WL 550614, at *5 (E.D. Pa. Feb. 4, 2020) (where "an employer does less than discharge the employee, it can provide less process and still comply with

---

[6] In my prior memorandum, I did not assume that being paid while on leave ended the inquiry, in consideration of the Third Circuit's decision in *Dee v. Borough of Dunmore*, 549 F.3d 225, 231 n.10 (3d Cir. 2008), which explained that a suspension "with pay may – but need not necessarily – be found to affect" a due process inquiry. *See* Memorandum at 14, ECF 141 ("Defendants assert that the decision to suspend Suniaga with pay is alone sufficient to extinguish Plaintiff's due process claim. I disagree . . . [T]he School District's decision to suspend Plaintiff with pay may weigh strongly against Plaintiff's claim, but does not extinguish it.").

the Constitution"). Such flexibility is particularly important in the middle school context with students in their early adolescence, where, as here, there were two recent disciplinary infractions involving inappropriate physical contact, albeit of a non-sexual nature.

Plaintiff again alludes to the policy's "confidentiality" provision. To the extent this is meant as an argument that the public was not permitted to know about the investigation, the language of the provision cannot reasonably be construed so broadly.[7]

Plaintiff also contends that I failed to consider facts that in his view materially impact the Due Process analysis:

> [1] The fact that all of the SDDs with the exception of Lawless received the parent's exaggerated and erroneous allegations on the evening before Mulvey took any steps to determine the truth of the hearsay contained therein; [2] that Standish responded to Mulvey that evening indicating that she may have to put Suniaga on leave, without consideration of any of the *Matthews* [sic] factors;[8] [3] The three student interviews conducted by Mulvey the following morning within the space of two hours resulting in notes which cannot be accurately reproduced and do not provide the type of investigation required by the nondiscrimination policy and cannot be described as adequate, reliable and impartial.[9] ECF 146 at 7-8.

Some of these points are misleading, while others are factually true but immaterial. Plaintiff's assertion that several School District officials received the May 6 email is correct but ultimately inconsequential to the Due Process inquiry. As to the Standish email, it is the investigation as a whole – not an isolated email – that must satisfy the requirements of the Due Process Clause. Finally, I must disagree with Plaintiff's characterization of Principal Mulvey's

---

[7] The provision states that the "[c]onfidentiality of the parties, the witnesses, the allegations, the filing of a complaint and the investigation shall be handled in accordance with this policy, the District's legal and investigative obligations and Applicable Law." ECF 146-3 at 2.

[8] In the email at issue (sent from her iPhone the evening of the initial allegations) HR Director Standish messages Principal Mulvey: "Let me know what support you need. We may have to put Leo out on leave pending investigation." ECF 146-4.

[9] Plaintiff later characterizes Principal Mulvey's interview notes as "chicken scratch" and "objectively worthless." ECF 146 at 10.

interview notes. Not only are Mulvey's notes mostly legible, but his preliminary findings were largely corroborated, forming the basis for a 30-day suspension without pay following a hearing.[10]

### 2. *Inadmissible evidence*

Evidence submitted with a motion for summary judgment must be in a form "as would be admissible at trial and thus must be 'reducible to admissible evidence.'" *Williams v. Borough of West Chester*, 891 F.2d 458, 465 n.12 (3d Cir. 1989) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). Plaintiff maintains that the School District Defendants cited inadmissible evidence in their motion, including references to Plaintiff's disciplinary history and to hearsay allegations.

Plaintiff contends that Defendants improperly reference his prior disciplinary history, specifically two incidents during the 2017-2018 Marsh Creek school year for which he was sanctioned in the form of a reprimand and brief suspension. These incidents, Plaintiff avers, "lack any relevance" because they involved "his physical interaction with students" rather than "inappropriate comments or actions in the classroom of the type alleged in the present case." ECF 146 at 8 n.5; *id.* at 14. Plaintiff asserts that, to the extent the 2018 incidents are relevant, their probative value is substantially outweighed by their prejudicial impact. I strongly disagree. Plaintiff's disciplinary history was offered to demonstrate why School District officials, and Principal Mulvey and HR Director Standish in particular, were on heightened alert regarding the May 2019 Marsh Creek allegations at issue here. *See* Memorandum at 6 ("The supervisory

---

[10] And where the investigation did not corroborate the allegations, my prior memorandum noted the divergence. *See* Memorandum at 3 n.7 ("During a May 29 hearing, it was revealed that the parent who sent the May 6 email had retracted the allegation that Suniaga had displayed their daughter's picture on the board."). On this point, Plaintiff contends that "[t]he lack of written statements, and a proper investigation and report, left Suniaga with the wild but conflicting accusations made by three classmates of the complaining student by the three students Mulvey interviewed on May 7, 2019." ECF 146 at 10. But the allegations were not "wild." Following a hearing, some of the allegations were found to be credible and ultimately served as the basis for a 30-day suspension without pay. *See* Memorandum at 5.

personnel involved in these prior incidents, Principal Mulvey and HR Director Standish, were also involved in the investigations relevant to this case…In 2018, Principal Mulvey advised Plaintiff that 'references to a student's physique from a teacher could be interpreted as harassment' – and that it was therefore 'imperative that [he] refrain from these types of interactions in the future, or there could be more serious disciplinary consequences.'"). [11]

Plaintiff also misinterprets the relevance of the social media allegations. These statements are not hearsay because they are not offered to prove the truth of the claims.[12] Rather, the internet postings are relevant to demonstrate why school district officials acted as they did in the face of sustained expressions of outrage from Beaver Creek parents and on social media following Plaintiff's transfer to an elementary school just days prior to the 2019-2020 school year.

### 3. *Law of the case*

Plaintiff next points to Judge Robreno's February 2021 order, issued at the motion to dismiss stage, stating that Principal Mulvey's statements "plausibly created a false and defamatory impression that allegations were reported that Suniaga made inappropriate comments toward students." ECF 58 at 3 n.4.[13] Plaintiff asserts that Judge Robreno's ruling "became the law of the case, not subject to disregard or relitigation." ECF 146 at 3 n.2; ECF 148 at 3 n.2.

This argument misses the mark. It is neither improper nor uncommon for a court to find an allegation plausible at the motion to dismiss stage and then, after the close of discovery, dismiss

---

[11] There was a separate incident involving civil litigation against Plaintiff involving a "flip flop," but I agree that it was irrelevant and gave it no weight in evaluating the decisions of school administrators.

[12] Indeed, in my prior memorandum, I was careful to note that the allegations were ultimately determined to be "wildly inaccurate" and "utterly meritless." Memorandum at 1, 15.

[13] Judge Robreno stated that "Plaintiffs allege that the statements in Mulvey's email created a false and defamatory impression because there were no allegations made that Suniaga made inappropriate comments to students. Instead, the Notice of Allegations asserted that his conduct 'caused male students to make inappropriate statements causing one or more students to feel badly.' Viewing these facts in the light most favorable to Plaintiffs, Mulvey's statements plausibly created a false and defamatory impression that

the claim on summary judgment. Indeed, claims are frequently dismissed on summary judgment after first withstanding a motion to dismiss.

    *4. Public reaction and "fresh allegations"*

Plaintiff then rehashes a previously rejected argument – that Principal Lawless' email updates to parents were defamatory in part due to "the reaction of the public." ECF 146 at 11. But "public reaction" is not the governing standard for determining whether a statement implies the existence of undisclosed unlawful conduct.

Plaintiff also disagrees with my statement that Beaver Creek officials were confronted in August with "fresh allegations," contending that the new allegations were, "[a]t best . . . the repetition of past hearsay allegations of increasingly questionable origin" and that Principal Lawless' emails created a "false impression that there were new allegations worthy of investigation and that investigations were being conducted." ECF 146 at 12-13. Plaintiff is correct that most of the new allegations were ultimately determined to be meritless. Nonetheless, there *were* some fresh complaints, including from a former student who levied accusations of harassment, and a complaint of a purportedly suggestive video posted to Plaintiff's Facebook page. Superintendent Lonardi testified to additional allegations at the parent meeting, and the need to investigate them.[14] Principal Lawless undeniably had an obligation to address parents' concerns (*see*, *e.g.*, ECF 130-39) and she did so by correctly referring to the new reports as "allegations" (ECF 136-40), adding

---

allegations were reported that Suniaga made inappropriate comments toward students." ECF 58 at 3 n.4 (emphasis in original).

[14] In their motion for summary judgment, the School District Defendants attached an affidavit from Dr. Lonardi asserting that there were "5 additional allegations" at the parent meeting, citing to her deposition. ECF 130-46 at ¶ 55. But they attached just one unrelated page of the testimony. *See* ECF 130-37. Defendants were instructed to supply the full transcript. The affidavit is inaccurate, as Dr. Lonardi did not specify a number: Lonardi testified to "additional allegations", but the "5" in the transcript corresponds to the line number of the testimony. The Court will assume that this was the product of a careless attempt to "copy and paste" from the transcript.

that no student at Marsh Creek "was ever touched or put in harm's way." ECF 136-34. Principal Lawless' email updates cannot reasonably be read as creating a defamatory impression for which the School District could be held liable if Plaintiff were able to prevail under a ratification theory.[15] *See* Memorandum at 19-21.

In sum, because none of Plaintiff's arguments present newly discovered evidence or establish clear errors of law or fact, his motion for reconsideration must be denied.

**B. The School District Defendants' renewed motion for summary judgment is granted.**

In their renewed motion for summary judgment, the School District Defendants "seek to raise arguments regarding the Plaintiffs' state law claims that were inadvertently not raised" in their prior motion. ECF 145-1 at 3. They now argue that my analysis of the defamation issues presented under Section 1983 also warrants summary judgment on Plaintiff's state law claims for defamation, false light, and tortious interference. *Joseph v. Scranton Times L.P.*, 129 A.3d 404, 424 (Pa. 2015) (quoting 42 Pa. C.S. § 8343(a)) (defamation); *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014) (quoting *Larsen v. Phila. Newspapers, Inc.*, 543 A.2d 1181, 1188 (Pa. Super. Ct. 1988) (en banc)) (false light); *Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.*, 20 A.3d 468, 478-79 (Pa. 2011) (adopting Restatement (Second) of Torts § 772(a) and holding that truthful statements cannot form the basis of a claim for tortious interference). In his Response, Plaintiff does not appear to contest that his state law claims rise and fall with his federal claims. ECF 148 at 4-5. Summary judgment will therefore be granted as to the state law tort claims as well, which in turn requires dismissal of Plaintiff's state law conspiracy claim. *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 789 (3d Cir. 1999). And necessarily, Jacquelyn

---

[15] The same analysis applies to Principal Mulvey's May 13 email. *See* Memorandum at 18-19.

Suniaga's derivative claim for loss of consortium is extinguished. *Darr Constr. Co. v. Workmen's Comp. Appeal Bd.*, 715 A.2d 1075, 1079-80 (Pa. 1998).

I must therefore grant summary judgment on behalf of the School District Defendants as to all remaining claims in Plaintiff's Third Amended Complaint.

### C. Entry of final judgment under Rule 54(b)[16]

I construe Plaintiff's brief – ECF 148 at 5 – as requesting certification of final judgment under Federal Rule of Civil Procedure 54(b), which permits a district court to enter a final judgment on an order that adjudicates only some of the claims if it determines "there is no just reason for delay." Fed. R. Civ. P. 54(b). The district court must first determine "whether there has been an ultimate disposition on a cognizable claim for relief as to a claim or party such that there is a final judgment." *Elliott v. Archdiocese of New York*, 682 F.3d 213, 220 (3d Cir. 2012). If there has been an ultimate disposition, then the court must "determine whether there is any just reason for delay, taking into account judicial administrative interests as well as the equities involved." *Id.* (quotations omitted). A district court may direct entry of a final judgment under the rule "only if the court expressly determines that there is no just reason for delay."[17] *Id.*

Here, there has been an ultimate disposition on all of Plaintiff's claims against the School District Defendants. The adjudicated claims against the School District Defendants are legally

---

[16] In his Response, Plaintiff submits that "should the Court not grant Plaintiffs' Motion for Reconsideration, Plaintiffs will seek the most expedient path to the Third Circuit which appears to be the entry of a final Order by this Court." ECF 148 at 5. I construe this statement as a request to enter a final judgment under Rule 54(b) and will thus address the issue here rather than require Plaintiff to file a formal motion.

[17] "In considering whether there is a just reason for delay of an appeal of a decided claim in a multi-claim lawsuit, the factors to consider are: (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like." *See Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 203 (3d Cir. 2006).

distinct from the state law tort claims against the non-School District Defendants. And though there is naturally some degree of factual overlap, the remaining claims against the individual non-School District Defendants are based primarily on statements published on social media and are thus entirely independent of the adjudicated claims against the School District Defendants.[18] Further, it is unlikely that future developments in the case would moot the need for appellate review.

This case is approaching its fifth anniversary. When it was transferred to me in August 2023, discovery remained incomplete. I withheld action to allow continued settlement discussions before the assigned magistrate judge until counsel for Plaintiff wrote in December 2023 that further discussions would not be fruitful. ECF 125. In practical terms, Plaintiff is unlikely to collect any judgment against the remaining individual defendants. Taking into account the interests of judicial economy and the equities involved, I am satisfied that there is no just reason for delay. I will therefore direct entry of a final judgment pursuant to Rule 54(b) as to Plaintiff's claims against the School District Defendants.

## IV. Conclusion

For the reasons set forth above, Defendant's renewed motion for summary judgment will be granted. Plaintiff's motion for reconsideration will be denied. The Court will enter a judgment under Rule 54(b) with respect to Plaintiff's claims against the School District Defendants. An appropriate order follows.

    /s/ Gerald Austin McHugh
United States District Judge

---

[18] The only claim where there is potential for overlap is Count III (Conspiracy) in which Plaintiff contends that the School District Defendants conspired with the non-School District Defendants to deprive Plaintiff of his constitutional rights. *See* Third Am. Compl. ¶¶ 244-45. I have seen no evidence in the record that would support the existence of any agreement between parents and school officials.